UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

STANLEY L. GIBBS #162140,

               Plaintiff,                             Case No. 2:18-cv-139

v.                                          Honorable Gordon J. Quist

M. SKYTTA et al.,

               Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and state law.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Meyers, Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric.

## Discussion

### I.     Factual Allegations

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Michigan.  The events about which

he complains occurred at that facility.  Plaintiff sues MDOC Director Heidi Washington and the following MDOC employees at AMF:  Warden Daniel Lesatz; Deputy Warden Lincoln Marshal;[1] Assistant Resident Unit Supervisors (ARUS) Unknown DeForge and Unknown Bastain;[2] Lieutenant Unknown Wickstom; Sergeant Unknown Wertanen; Classification Director Unknown Adams; and Correctional Officers M. Skytta, Unknown Dube, P. Mayo, Unknown Massie, Unknown Erkkila, Unknown Huhta, Unknown Lanctot, Unknown Meneric, Unknown Cordanado,[3] Unknown Meyers, and Unknown Hemmila.

Plaintiff alleges that, on September 8, 2017, he received a prison job assignment with the yard crew in 6-Unit at AMF.  After he worked for 90 days, he was supposed to receive a pay raise, but he did not.  He wrote a grievance against Classification Director Adams for not paying him "full state pay."  (Am. Compl., ECF No. 11, PageID.65.)  Plaintiff alleges that Adams discriminated against him because he is African-American and he was receiving $25.00 per month whereas white prisoners working the same detail were making almost $70.00 per month.

In addition, according to a memo written by Warden Lesatz, a prisoner working on the yard crew from November 15, 2017 to April 18, 2018, was to be paid time and a half due to severe weather.  Plaintiff alleges that he never received that pay from Defendants Adams or Deforge.

Plaintiff wrote a grievance on Defendants Adams and Deforge.  On November 12, he was called out for a meeting in Defendant Deforge's office regarding the grievance.  Defendants Adams and Huhta were also present.  The three of them threatened to remove Plaintiff from his

---

[1] Also spelled "Marshall."
[2] Also spelled "Bastian."
[3] Also spelled "Coronado."

2

job and to take $9.00 from his prison account if he did not "sign off" on the grievance. (*Id.*) They also told him that if he did not sign off, they would have other officers harass Plaintiff and write false misconduct tickets on Plaintiff to have him placed in the "hole." (*Id.*) Plaintiff signed off on the grievance. Later that day or the following day, $9.00 was taken from his prison account.

About two months later, Plaintiff filed another grievance on Deforge because Plaintiff believed that he was being underpaid. In response to the grievance, Deforge threatened Plaintiff, telling him that if he didn't sign off on the grievance then he would take Plaintiff's job away by having other officers (Erkilla, Dube, and Huhta) write false misconducts on Plaintiff to put him in the "hole." (*Id.*)

On January 6, 2018, Defendant Erkilla allegedly started to "harass" Plaintiff, telling him that because he filed a grievance on Deforge and refused to sign off on it, Plaintiff would have "nothing coming" from Erkilla, and would be "last to get prisoner store and J-pay in 6-unit." (*Id.*, PageID.66.)

On March 22, Defendant Meneric interviewed Plaintiff about a grievance Plaintiff had written on Officer Dube. Apparently, Dube allegedly threatened to allow other officers to ransack Plaintiff's cell if Plaintiff did not sign off on the grievance against Dube.

That same day, Plaintiff filed a grievance against Officer Huhta for threatening to help Defendant Deforge "set [Plaintiff] up" because Plaintiff had filed grievances on other officers in the unit. (*Id.*, PageID.68.) Huhta told Plaintiff that he was going to "work on putting Plaintiff in the hole." (*Id.*) Plaintiff filed several grievances on Huhta in March and April and then Huhta allegedly helped Dube put Plaintiff in the "hole." (*Id.*)

On March 28, Dube told Plaintiff that if he did not stop writing grievances on Deforge and other officers in 6-unit, Dube would put Plaintiff in the "hole." (*Id.*, PageID.66.)

Dube also went to Plaintiff's cell and "trashed" Plaintiff's property, throwing his pictures, clothing, and documents on the floor. (*Id.*) That same day, Plaintiff received a misconduct for destruction and misuse of property.

Over the next two weeks at the end of March and in early April, Plaintiff wrote four grievances on Officer Dube. Officer Dube subsequently wrote a "false" "threatening behavior" misconduct report on Plaintiff. (*Id.*)

Sergeant Wartanen interviewed Plaintiff regarding the grievances on Officer Dube. Wartanen allegedly threatened that if Plaintiff did not sign off on the grievances, he "wouldn't be in 6-unit too much longer;" he would be placed in the "hole." (*Id.*)

On April 3, Plaintiff wrote several grievances on Defendant Hemmila for "harassment" because Hemmila allegedly threatened to help Deforge, Huhta, and Dube put Plaintiff in the "hole" for writing too many grievances. (*Id.*, PageID.68.) Hemmila told Plaintiff that if he did not stop writing grievances, "Defendants" would withhold items from Plaintiff's food trays. (*Id.*)

On April 18, Officer Skytta escorted Plaintiff to segregation for the threatening behavior misconduct report written by Defendant Dube. Skytta told Plaintiff he would make sure that Plaintiff would "never get out of the hole." (*Id.*, PageID.66.) Skytta wrote another "false" "threatening behavior" ticket on Plaintiff, causing Plaintiff's confinement in segregation to extend to May 31, 2018.

On May 31, Officer Lanctot allegedly retaliated against Plaintiff for filing a grievance against Officer Bastain. Lanctot told Plaintiff that if Plaintiff did not stop writing grievances, Lanctot would "make sure he took Plaintiff's food trays away and put Plaintiff on food

loaf" by writing a false misconduct. (*Id.*, PageID.67.) Apparently, Lanctot wrote a "false" misconduct on Plaintiff later that day.

That same day, Skytta escorted Plaintiff back to his cell. While doing so, Skytta allegedly "assaulted" Plaintiff and refused him medical care. (*Id.*, PageID.66.) Plaintiff told Skytta that he was going to write another grievance on Skytta for the assault and for Skytta's threat. Skytta wrote another "false" misconduct ticket on Plaintiff, calling Plaintiff a "little bitch" who was "just like the rest of the ni**ers on A-wing." (*Id.*)

On June 7, Defendants Massie and Wickstrom refused to give Plaintiff a hearing on the two allegedly false misconducts that were written by Defendants Skytta and Lanctot on May 31. As a result, Plaintiff was found guilty of disobeying a direct order and threatening conduct. (*Id.*, PageID.67.)

On June 14, Plaintiff wrote a grievance on Officer Bastain because Bastain threatened Plaintiff that if he "didn't stop writing grievances on him [Bastain] and the other defendants," then Bastain would keep Plaintiff "on the worst wing in 3-unit where all the rats, insects and filthy dirty cell[s] are and not put Plaintiff on the honor wings – upper B and D and C." (*Id.*) Bastain also threatened to keep Plaintiff in segregation longer if Plaintiff continued to write grievances on staff members. Plaintiff filed several grievances against Bastain for making these comments.

On July 11, Skytta allegedly "sexually harassed" Plaintiff, threatening to "fuck [Plaintiff] in the ass hole and make you suck my dick." (*Id.*) Plaintiff filed a PREA grievance about these comments.

On August 1, Officer Cordanado threatened to write a false misconduct on Plaintiff to keep him in segregation longer, after Cordanado discovered that Skytta had been removed from

A-wing for two weeks as a result of "facts Plaintiff had written in several grievances on Skytta." (*Id.*) Cordanado also went to Plaintiff's cell when Plaintiff was in the showers and threw Plaintiff's clothes on the floor.

On August 2, Skytta took Plaintiff's personal television and took him "off Stage-4" and put him "back on Stage-3" so that "Plaintiff would lose prisoner store and the use of the telephone." (*Id.*) Two days later, Skytta allegedly threatened to poison Plaintiff's food trays.

Between March and August 2018, Plaintiff filed multiple grievances against Defendants Mayo and Marshal for failing to process grievances. Mayo is the Grievance Coordinator. Marshal is Mayo's supervisor.

Plaintiff also sent multiple kites, letters, and complaints about the conduct of other officers to Defendant Lesatz. He did not respond. Plaintiff also sent grievances to Washington about the actions of the other officials, but she did not correct those actions.

Based on the foregoing, Plaintiff asserts the following claims under state law: libel, slander, abuse of process, ethnic intimidation, and malicious prosecution. Plaintiff also brings claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. He claims that Defendants have denied him his rights under the First Amendment, deprived him of privacy under the Fourth Amendment, denied him due process and equal protection guaranteed by the Fourteenth Amendment, and subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

As relief, Plaintiff seeks a declaratory judgment as well as compensatory and punitive damages. In addition, Plaintiff has filed a motion for a preliminary injunction. (ECF No. 8.)

II.    <u>Failure to State a Claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

III.    <u>Insufficient Allegations</u>

Plaintiff names Officer Meyers as a defendant, but fails to allege any specific allegations against him/her. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded

7

to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Plaintiff's claim against Defendant Meyers falls far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the complaint must be dismissed against Defendant Meyers.

IV.     42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. Respondeat Superior

Plaintiff contends that Defendants Washington, Lesatz, Marshal, Mayo, and Meneric did not correct the actions of other officers. Plaintiff sent letters, kites, complaints, or grievances to these officials and they did not address Plaintiff's concerns.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Washington, Lesatz, Marshal, Mayo, and/or Meneric engaged in any active unconstitutional behavior. The fact that they received or reviewed complaints or grievances related to the conduct of other officers does not make them liable under § 1983. Moreover, the fact that Defendant Lesatz issued a memorandum about time-and-a-half pay does not state a cognizable claim.

Plaintiff contends that these Defendants were involved in a conspiracy with other defendants to deprive him of his rights. "A civil conspiracy is an agreement between two or more

persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id*. at 944. Instead, the plaintiff must show that: (1) "a single plan" existed; (2) "the alleged coconspirator shared in the general conspiratorial objective" to deprive the plaintiff of a constitutional right (or a federal statutory right); and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Id*. A plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff has not alleged sufficient facts from which to infer an agreement, let alone a conspiracy, between Defendants Washington, Lesatz, Marshal, Mayo, or Meneric and any of the other defendants. His suggestion of a conspiracy is wholly speculative and conclusory. Accordingly, Plaintiff fails to state a claim under § 1983 against Defendants Washington, Lesatz, Marshal, and Meneric. The Court will address more specific allegations against Defendant Mayo in the next section.

**B. Failure to Process Grievances**

Plaintiff alleges that Defendant Mayo did not process certain grievances. This does not state a claim under § 1983. Plaintiff has no constitutional right to an effective grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).

Moreover, Plaintiff does not have a protected interest in the prison grievance procedure that would trigger a right to due process. Michigan law does not create a liberty interest in the grievance procedure. *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001) (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive him of due process. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

In addition, Defendant Mayo's actions have not barred Plaintiff from exercising his First Amendment right to petition the government for redress of grievances. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process in this case. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Defendant had improperly prevented Plaintiff from filing a grievance, his right of access to the courts to petition for redress cannot be compromised by his inability to file institutional grievances, and he therefore cannot satisfy the "actual injury" requirement for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The statute requiring exhaustion of administrative remedies before filing a civil rights suit only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to

11

the grievance process, that process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

Furthermore, as indicated in the previous section, Plaintiff's suggestion that Defendant Mayo was involved in a conspiracy with other officials to retaliate against Plaintiff is wholly conclusory. In light of the foregoing, Plaintiff fails to state a cognizable claim under § 1983 against Defendant Mayo.

## C. Refusal to Provide Misconduct Hearing

Plaintiff claims that Defendants Massie and Wickstom refused to provide Plaintiff a hearing regarding "false" misconduct charges reported by Defendants Skytta and Lanctot on May 31, and that this refusal was motivated by retaliation and deprived Plaintiff of his right to due process.

### 1. Due Process

To state a due process claim, Plaintiff must identify a protected property or liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Plaintiff cannot contend that his misconduct convictions will inevitably affect the duration of his sentence because he is confined under a life sentence, without the possibility of parole. *See*

http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=162140 (visited Nov. 13, 2018). Misconduct convictions will not lengthen or otherwise affect that sentence.

Furthermore, Plaintiff has not identified any significant deprivation arising from his convictions. Apparently, Plaintiff was confined in segregation for a period of time. Placement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for a relatively short period of time does not require the protections of due process. *See Joseph,* 410 F. App'x at 868 (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Jones v. Baker,* 155 F.3d 810, 812-23 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of

segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). Thus, Plaintiff's allegation that he was placed in segregation for an unspecified period of time is not sufficient to state a due process claim.

Without an extension of the duration of his sentence or an atypical and significant hardship, Plaintiff's due-process claim fails. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

### 2. Retaliation

Plaintiff also claims that Defendants Massie and Wickstrom refused to provide a hearing in retaliation for Plaintiff's protected conduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

14

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Here, Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed some grievances against other officers before the actions of Defendants Massie and Wickstrom, their actions must have been motivated by his grievances. That does not necessarily follow, however. Moreover, the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Thus, Plaintiff's allegations suggesting a temporal proximity between Defendants' conduct and one of his many grievances are insufficient to state a retaliation claim. Plaintiff's related assertion that they were involved in a conspiracy with other defendants to retaliate against him is wholly conclusory.

### D. Conduct by Cordanado

Plaintiff alleges that Defendant Cordanado threatened to write a false misconduct on Plaintiff to keep him in segregation, and went to Plaintiff's cell and threw his clothes on the floor. These actions do not state a claim under § 1983. First, they do not state a violation of the Eighth Amendment because allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Moreover, throwing Plaintiff's clothes on the floor does is not a constitutional violation.

Plaintiff contends that Cordanado was acting "on a retaliation and conspiracy level" (Am. Compl., PageID.67), but Plaintiff's allegations of conspiracy and retaliation are wholly conclusory. He alleges no facts from which to reasonably infer that Cordanado's actions were motivated by Plaintiff's protected conduct. He merely alleges that this conduct occurred after Cordanado allegedly learned about Skytta's temporary removal from the unit due to Plaintiff's grievances against Skytta. As indicated in the previous section, however, temporal proximity between the filing of a grievance (or in this case, an alleged consequence of the grievance) and an adverse action is generally not enough, standing alone, to infer retaliatory motive.

Likewise, Plaintiff's allegations of conspiracy between Cordanado and other officers is conclusory.

## E. Equal Protection

Plaintiff implies that Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric acted or failed to act for discriminatory reasons.[4] Plaintiff alleges that he is "Afro-American" and these Defendants are white. (Am. Compl., PageID.69.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

---

[4] Plaintiff asserts a claim of "ethnic intimidation" against all defendants, which the Court construes generously to include a possible claim under the Equal Protection Clause. For purposes of this Opinion, the Court only addresses the equal protection claim as it pertains to Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric.

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination against these Defendants. Indeed, Plaintiff alleges no facts whatsoever suggesting racial discrimination by these Defendants. His assertion that Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric discriminated against him on account of race is wholly conclusory. The mere fact that Plaintiff and these Defendants have different racial backgrounds is not sufficient to plausibly suggest that their actions were motivated by animus toward Plaintiff's race.

In short, Plaintiff fails to state a claim under § 1983 against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric. The Court will review the complaint to determine whether Plaintiff states any other claims against these defendants.

V.      42 U.S.C. § 1981

42 U.S.C. § 1981 provides that all persons shall have the same right to "make and enforce contracts" and to enjoy "the full and equal benefit of all laws and proceedings for the security of persons and property . . . ." *See* 42 U.S.C. § 1981(a). "[T]he term 'make and enforce

18

contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Plaintiff does not plausibly allege that Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric discriminated against him in the making or enforcement of contracts.

The closest Plaintiff comes to making any allegations along these lines is his assertion that he did not receive the same pay as other prisoners working the same detail as him. Assuming for the sake of argument that Plaintiff's work detail created a "contractual relationship" between Plaintiff and the MDOC or between Plaintiff and any other individual, his allegations do not support a claim against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric. The latter defendants were not involved in Plaintiff's work detail or his compensation for that work. Only Adams and Deforge are alleged to have been responsible for paying Plaintiff. Thus, Plaintiff does not state a claim against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric under § 1981.

VI.    42 U.S.C. §§ 1985, 1986

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). The plaintiff further must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Radvansky v. City of Olmsted*

*Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).

As indicated in Section IV, Plaintiff does not state a claim of conspiracy or discrimination against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric. Accordingly, Plaintiff does not state a claim against them under § 1985.

42 U.S.C. § 1986 provides a cause of action against those that have knowledge of a § 1985 conspiracy and neglect to prevent it. Because the Court has determined that the complaint does not state a § 1985 conspiracy against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric, Plaintiff also fails to state a claim against them under § 1986.

In short, Plaintiff fails to state a claim against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric under federal law.

VII.    State Law

Plaintiff also asserts several claims under state law, including "ethnic intimidation," "libel and slander," "abuse of process," and "malicious prosecution." Because Plaintiff fails to state a federal claim against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric, the Court must consider whether to exercise supplemental jurisdiction over Plaintiff's state-law claims against them. When making this determination, the Court "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). After considering these factors, the Court finds that they weigh against the exercise of supplemental jurisdiction. Accordingly,

Plaintiff's state law claims against Defendants Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric will be dismissed without prejudice.

VIII.    Pending Motions

A few weeks after filing the complaint, Plaintiff filed a motion to "set aside" this case until he exhausted his grievance remedies. (ECF No. 2.) Thereafter, he filed a motion for extension of time to amend the complaint (ECF No. 6), a motion for a preliminary injunction (ECF No. 8), an amended complaint (ECF No. 11) and several supplements thereto (ECF Nos. 14, 16), and an "emergency notice" which the Court construes as a motion to amend the complaint (ECF No. 17).

**A.  Motion to Set Aside / Motion for Extension of Time**

Plaintiff's motion to set aside the case and motion for extension of time to file an amended complaint appear to be mooted by Plaintiff's amended complaint.

**B.  Preliminary Injunction**

As to Plaintiff's request for a preliminary injunction, that relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a

prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his claims. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the

issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary injunctive relief will be denied.

### C. Motion to Amend

Lastly, Plaintiff's has filed a "notice" to add a defendant that was part of his original complaint, Defendant Unknown Holley, an officer at AMF. Defendant Holley is not mentioned anywhere in the amended complaint. The amended complaint takes place of the original; consequently, Defendant Holley is no longer part of this action.

Because Plaintiff has already amended his complaint once, his request is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id* at 182. If a claim would be properly dismissed, amendment to add the claim would be futile. *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

Plaintiff alleges that Defendant Holley has threatened to poison Plaintiff's food, has refused to let Plaintiff take a shower, and has continued to "sexually harass" Plaintiff. (Mot., ECF No. 17, PageID.288.)

None of the allegations asserted by Plaintiff against Holley would give rise to a cognizable federal claim. Plaintiff's allegations potentially implicate the Eighth Amendment,

which prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The conduct alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff does not allege that Holley deprived Plaintiff of an essential need or subjected him to a serious risk to his health or safety. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff provides no details regarding the "sexual harassment" that he has endured, but courts consistently have held that sexual harassment, absent contact or touching, does not give rise to an Eighth Amendment claim because such conduct does not constitute the unnecessary and

24

wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Plaintiff's vague assertion of sexual harassment would not suffice to state a claim.

In short, adding Holley to Plaintiff's complaint would be futile because Plaintiff has not alleged facts that would state a claim against him/her. Accordingly, Plaintiff's motion to amend will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Meyers, and the claims under federal law against Defendants

Washington, Lesatz, Cordanado, Massie, Wickstrom, Mayo, Marshal, and Meneric, will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The state-law claims against the latter defendants will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.

Finally, Plaintiff's pending motions (ECF Nos. 3, 6, 8, 17) will be denied.

An order consistent with this opinion will be entered.


Dated: December 4, 2018                    _____/s/ Gordon J. Quist_____
                                            GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE